# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche Manning | Sitting Judge if Other than Assigned Judge | Nan R. Nolan |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6916 | **DATE** | 6/11/2002 |
| **CASE TITLE** | Jessie E. Thompson, et al. vs. City of Chicago | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Report and Recommendation recommending that the District Court grant in part and dismiss as moot in part the plaintiffs' motion for class certification [34-1] is hereby entered of record.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | JUN 12 2002 | |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | | 76 |
| | Mail AO 450 form. | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | | |
| | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JESSIE E. THOMPSON, et al., | ) | **DOCKETED** |
| Plaintiffs, | ) | JUN 1 2 2002 |
| v. | ) | No. 01 C 6916 |
| CITY OF CHICAGO, | ) | Judge Blanche M. Manning |
| Defendant. | ) | Magistrate Judge Nan R. Nolan |

## REPORT AND RECOMMENDATION

Before it was repealed on March 27, 2002, section 8-4-010(f) of the Chicago Municipal Code stated that "[a] person commits disorderly conduct when he knowingly: (f) Goes about begging or soliciting funds on the public ways, except as provided in Chapter 10-8, Sections 10-8-110 through 10-8-170," (hereinafter "the panhandling ordinance").[1] Plaintiffs Jesse E. Thompson, Ronald Davis, and Nadine Buchanan bring this putative class action against the City of Chicago ("City"), alleging that the City's enforcement of the panhandling ordinance violated their rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution. The Plaintiffs seek: (1) declaratory relief stating that (i) the City's enforcement of the panhandling ordinance violated the First Amendment, and (ii) the panhandling ordinance is unconstitutional; (2) an injunction prohibiting the City from enforcing the panhandling ordinance; and (3) monetary relief. (*Id.*) The case has been referred to the Court for decision on the plaintiffs' motion for class certification (Docket Entry #24). For the reasons discussed below, the Court recommends that the District Court GRANT IN PART and DISMISS AS MOOT IN PART the plaintiffs' motion for class certification.

---

[1] Chapter 10-8 allows individuals to solicit charitable donations provided they have a permit.

## Background

It is undisputed that the Chicago Police Department has enforced the panhandling ordinance on numerous occasions between September 6, 1999 and March 2002.[2] *Thompson v. City of Chicago*, No. 01 C 6916, 2002 WL 449057, at *1 (N.D. Ill. Mar. 22, 2002). When enforcing the panhandling ordinance, officers either arrested or threatened to arrest individuals for panhandling or issued a ticket. *Id.*

Plaintiff Jesse Thompson is a resident of Chicago who is homeless. (Pls.' Mot. for Class Certification, Ex. A, ¶ 2.) Mr. Thompson panhandles in order to earn money for food. (*Id.*, ¶ 4.) On an average day, Mr. Thompson panhandles for six hours and earns $20.00. (*Id.*) During the class period, Mr. Thompson has been arrested and jailed pursuant to the panhandling ordinance. (*Id.*, ¶ 5.) Usually Mr. Thompson is kept in jail between eight and twenty-four hours. (*Id.*) The most recent dates of his panhandling arrests are: August 6, 2001, June 25, 2001, and June 5, 2001. (*Id.*) Mr. Thompson has also received panhandling tickets during the class period. (Thompson Dep. at 138-193; Hr'g Tr., Mar. 7, 2002, at 137.)

Plaintiff Ronald Davis is a resident of Chicago who is homeless. (Pls.' Mot. for Class Certification, Ex. B, ¶ 2.) Mr. Davis panhandles in order to earn money for food. (*Id.*, ¶ 4.) On an average day, Mr. Davis panhandles for six to eight hours and earns $15.00. (*Id.*) During the class period, Mr. Davis has been arrested and jailed pursuant to the panhandling ordinance. (*Id.*, ¶ 5.) Usually Mr. Davis is kept in jail between eight and twenty-four hours. (*Id.*) The most recent dates of his panhandling arrests are: August 28, 2001, July 12, 2001, and June 6, 2001. (*Id.*)

---

[2] In their complaint, the plaintiffs state that the relevant class period is September 6, 1999 to the present. (Pls.' Second Am. Compl., ¶ 26.)

Plaintiff Nadine Buchanan is a resident of Chicago who is homeless. (Pls.' Mot. for Class Certification, Ex. C, ¶ 2.) On an average day, Ms. Buchanan panhandles for two hours and earns $5.00. (*Id.*, ¶ 4.) During the class period, Ms. Buchanan has been arrested and jailed pursuant to the panhandling ordinance. (*Id.*, ¶ 5.) The most recent dates of her panhandling arrests are: August 5, 2001, March 14, 2001, and February 16, 2001. (*Id.*) Ms. Davis has also received panhandling tickets during the class period. (*Id.*)

Defendant City is a municipal corporation created under the laws of the state of Illinois.

## Discussion

The plaintiffs seek to certify a class for injunctive relief and a class for monetary relief. The Court will address each separately.

### I. Proposed Class for Injunctive Relief

The plaintiffs filed this suit on September 6, 2001, seeking declaratory, injunctive and monetary relief. On October 30, 2001, the Chicago Police Department sent a facsimile message to the twenty-five police districts and the department's specialized units instructing department members to cease enforcing the panhandling ordinance. *Thompson*, 2002 WL 449057, at *3. The City subsequently moved the Court to dismiss as moot the plaintiffs' claim for injunctive relief. The plaintiffs responded that their claim was not moot because the panhandling ordinance was still being enforced. After holding a two-day evidentiary hearing on the issue of mootness, the Court determined that the City failed to establish that the panhandling ordinance was moot. Specifically, the Court found that between October 31, 2001 (the day after the City announced its policy of not enforcing the panhandling ordinance) and February 2002, the police department issued ninety-four panhandling tickets and cited the panhandling ordinance on at least fifteen arrest reports. *Id.*, at *4.

Accordingly, the Court recommended that the District Court deny the City's motion to dismiss as moot the plaintiffs' motion for injunctive relief. *Id.*, at *8. Less than a week later, the City repealed the panhandling ordinance and then filed a second motion to dismiss as moot the plaintiffs' motion for a preliminary injunction. Based on the repeal of the ordinance and because the record contained no evidence that the City intended to reenact that ordinance, the Court recommended that the District Court dismiss as moot the plaintiffs' claim for injunctive relief. *Thompson v. City of Chicago*, No. 01 C 6916, 2002 U.S. Dist. LEXIS 8069, at *12 (N.D. Ill. May 3, 2002). If the District Court adopts that recommendation, the Court recommends that the District Court dismiss as moot the portion of the plaintiffs' current motion that seeks to certify a class for injunctive relief.

## II. Proposed Class for Monetary Relief

The plaintiffs move the Court to certify the following class under Federal Rule of Civil Procedure 23(b)(3):

> All persons who, during the Class Period, have been ticketed, arrested and/or jailed pursuant to Section 8-4-010(f) of the Chicago Municipal Code for panhandling on the public fora in Chicago and those persons who may in the future be ticketed, arrested or jailed pursuant to Section 8-4-010(f) of the Chicago Municipal Code for panhandling on the public fora in Chicago.

The putative class representatives (hereinafter referred to as "the plaintiffs") bear the burden of establishing that all of the requirements for class certification are satisfied. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). The plaintiffs must establish that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). In order to certify a class under Federal Rule of Civil

Procedure 23(b)(3), the court must also find that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

The City raises three main arguments in opposition to class certification: (1) the named class representatives are not adequate representatives of the class; (2) the plaintiffs' attorneys have not established that they are capable of adequately representing the class; and (3) the plaintiffs cannot satisfy Rule 23(b)(3)'s requirement that common issues predominate over individual issues. Even though the City does not dispute the other prerequisites to class certification, the Court must analyze each requirement enumerated in Rule 23. *See General Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982) (stating that a court may certify a class action only if it concludes that each requirement of Rule 23 has been satisfied); *Isaacs v. Sprint Corp.*, 261 F.3d 679, 682 (7th Cir. 2001) (same).

**A. Numerosity**

The plaintiffs must establish that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). To establish numerosity, plaintiffs are not required to provide an exact number of class members. *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989). Generally, a plaintiff can satisfy the numerosity requirement by demonstrating that there are at least forty potential plaintiffs. *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001) (citing 5 James Wm. Moore et al., *Moore's Federal Practice* § 23.22[3][a] (3d ed. 1999)); *In re Bank One Sec. Litig./First Chicago Shareholder Claims*, No. 00 CV 0767, 2002 WL 989454, at *3 (N.D. Ill. May 14, 2002) (noting that courts in the Northern District of Illinois have certified classes of less than thirty potential plaintiffs). It is undisputed that the City enforced the panhandling ordinance

against hundreds of persons during the relevant time period. The Court notes that during the five months that the City had an official policy of not enforcing the panhandling ordinance, police officers enforced that ordinance over one-hundred times. *Thompson*, 2002 WL 449057, at *3. Accordingly, the Court concludes that the plaintiffs have met Rule 23's numerosity requirement.

**B. Commonality**

The plaintiffs must establish that there are questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). "A common nucleus of operative fact is usually enough to satisfy the commonality requirement." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). A common nucleus of operative fact is typically found where the "defendants have engaged in standardized conduct towards members of the proposed class." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). For example, a suit challenging the constitutionality of a police department's standard policy satisfies the prerequisite of commonality, even if there exist individual issues regarding the application of that policy. *Rahim v. Sheahan*, No. 99 C 0395, 2001 WL 1263493, at *14 (N.D. Ill. Oct. 19, 2001); *see also Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (stating that "commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members"). In this case, the plaintiffs argue that the following legal and factual issues are common to each class member:

> a. Whether the Defendant previously maintained and continues to maintain a policy and practice to ticket, arrest and/or jail panhandlers pursuant to Section 8-4-010(f) of the Chicago Municipal Code;
>
> b. Whether Section 8-4-010(f) of the Chicago Municipal Code, on its face, violates the First Amendment of the United States Constitution;
>
> c. Whether Section 8-4-010(f) of the Chicago Municipal Code violates the First Amendment of the United States Constitution because it is a content-based

prohibition of panhandling, a well-established form of constitutionally protected free speech, that is not necessary to serve a compelling state interest and is not narrowly tailored to achieve that end; and

d. Alternatively, whether Section 8-4-010(f) of the Chicago Municipal Code violates the First Amendment of the United States Constitution because it is not narrowly tailored to serve significant government interests and does not leave open ample alternative channels of communication.

Because the constitutionality of the panhandling ordinance is a legal issue that is common to each member of the proposed class, the Court concludes that the plaintiffs satisfy Rule 23's commonality requirement.

### C. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A court's analysis of whether a representative party's claims are typical of the class members' claims is closely related to the court's commonality inquiry. *Keele*, 149 F.3d at 595. The Seventh Circuit has reasoned that "'[a] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other members and his or her claims are based on the same legal theory' . . . even if there are factual distinctions between the claims of the named plaintiffs and those of other class members." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (quoting H. Newberg, *Class Actions* § 1115(b), at 185 (1977)); *see also Stewart*, 275 F.3d at 227-28; *Adams v. R.R. Donnelley & Sons*, Nos. 98 C 4025, 96 C 7717, 2001 WL 336830, at *5 (N.D. Ill. Apr. 6, 2001) (reasoning that "[s]imilarity of legal theory is more important than factual similarity"). The typicality inquiry focuses on the relationship between the class representative and the class members: the court must determine whether "the named plaintiff's interests align[] with those of the proposed

class in such a way that the representative, in pursuing his own claims, will also advance the interest of the class." *Rahim*, 2001 WL 1263493, at *14.

In this case, the claims of the class representatives and the claims of the proposed class members are based on the same alleged course of conduct by the defendant—the City's allegedly unconstitutional policy of enforcing the panhandling ordinance. The City suggests that Mr. Thompson's claims are not typical of the claims of other class members who were ticketed for panhandling because the complaint does not affirmatively state that Mr. Thompson received a ticket for panhandling. As the plaintiffs correctly point out, however, Mr. Thompson testified both at his deposition and the evidentiary hearing that he has received panhandling tickets. (Thompson Dep. at 138-193; Hr'g Tr., Mar. 7, 2002, at 137.) Furthermore, even if Mr. Thompson had never received such a ticket, Ms. Buchanan's affidavit states that she has received tickets for panhandling. (Pls.' Mot. for Class Certification, Ex. C, ¶ 5.) Accordingly, the Court concludes that the class representatives' claims are typical of the claims of the proposed class members.

### D. Adequacy of Representation

The plaintiffs must establish that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This prerequisite consists of the following factors: (1) whether the plaintiffs' attorney is qualified, experienced, and generally able to conduct the proposed litigation; (2) whether the class representatives have interests that are antagonistic to the class; and (3) whether the class representatives have a sufficient interest in the case to assure vigorous advocacy. *Retired Chicago Police Ass'n*, 7 F.3d at 598; *In re Bank One Sec. Litig.*, 2002 WL 989454, at *5; *Hobson v. Lincoln Ins. Agency, Inc.*, No. 99 C 5619, 2001 WL 648958, at *2 (N.D. Ill. June 7, 2001).

## 1. Adequacy of Counsel

The Court concludes that the plaintiffs' attorneys can fairly and adequately protect the interests of the class. The City argues that the plaintiffs have not established that their attorneys are capable of conducting this class action. The City is correct that the plaintiff's initial motion does not contain any evidence of the lawyers' experience and qualifications. Attached to the plaintiffs' reply brief, however, are affidavits from the plaintiffs' attorneys that summarize their qualifications and relevant experience. These affidavits establish the following: (1) Attorney Thomas G. Morrissey is an experienced civil-rights attorney who has tried over nineteen jury cases in federal court and has acted as lead counsel in several civil rights class-action lawsuits; (2) Attorney Gary S. Caplan, a partner at the Chicago law firm Sachnoff & Weaver, has substantial class-action experience (over twenty class-action cases in the last thirteen years), as well as access to the resources of a large law firm; and (3) Attorney Mark G. Weinberg, a lawyer at Freed & Weiss—a law firm that specializes in consumer-fraud class-action litigation—also has class-action experience. (Pls.' Reply in Support of Mot. for Class Certification, Ex. 1.) Also, the Court has been able to observe the plaintiffs' lawyers during numerous court appearances, including a two-day evidentiary hearing. Based on these observations, the attorneys' affidavits, and also based upon the high quality of the briefs submitted by the plaintiffs' lawyers, the Court concludes that the plaintiffs' attorneys have sufficient qualifications and class-action experience to conduct this litigation.

The City also contends that the plaintiffs' lawyers are inadequate because they are more concerned with collecting attorneys' fees than with representing their clients. In support the City relies on an article from the Chicago Reader about the panhandling ordinance and Mr. Weinberg. The article states that "[Mr. Weinberg] says . . . without a victory or settlement agreement, he won't

get paid for his work on the panhandling case." (Def.'s Resp. to Pls.' Mot. for Class Certification, Ex. H.) The Court rejects the City's argument on several grounds. First, the statement is probably true. *See Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't of Health and Human Resources*, 532 U.S. 598 (2001). Second, the City has provided no evidence that the statement in the article is an accurate representation of Mr. Weinberg's comments. Finally, even assuming that the statement is an accurate representation of Mr. Weinberg's comments, the statement does not establish that Mr. Weinberg is more concerned with collecting attorney fees than with representing his clients. There are very few lawyers who have the luxury of working for free. The mere fact that the lawyer representing the class expects to be paid if his clients are ultimately victorious does not establish a conflict between the lawyer and the class.

## 2. Adequacy of Class Representatives

### (a) Whether the Class Representatives Have Interests that are Antagonistic to the Class

The Supreme Court has held that "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997) (internal quotation and citation omitted). "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim for representative status." 7A Charles Alan Wright, et al., *Federal Practice and Procedure* § 1768, at 327 (2d ed. 1986). The Court concludes that the representatives of the proposed class do not have interests that are antagonistic to the class. All class members have a common interest in establishing that the panhandling ordinance is unconstitutional. To the extent that members may have to prove individual damages, these individual interests would not be antagonistic to the interests of other class members.

**(b) Whether the Class Representatives Have a Sufficient Interest in the Case to Assure Vigorous Advocacy**

A class must have a "conscientious representative plaintiff." *Rand v. Monsanto Co.*, 926 F.2d 596, 599 (7th Cir. 1991). The burden of establishing this standard is not heavy; a class representative need only possess general knowledge of the case and participate in discovery. *Sebo v. Rubenstein*, 188 F.R.D. 310, 316 (N.D. Ill. 1999); *Sledge v. Sands*, 182 F.R.D. 255, 259 (N.D. Ill. 1998).

Relying on *Culver v. City of Milwaukee*, 277 F.3d 908, 912 (7th Cir. 2002), the City argues that the class representatives are inadequate because two of the class representatives failed to appear for their depositions, none of the class representatives initially signed their answers to the City's interrogatories, and only one of the three representatives attended the evidentiary hearing regarding the plaintiffs' motion for a preliminary injunction. The Court disagrees with the City's assessment of the class representatives. In *Culver*, the Seventh Circuit reasoned that the class representative was not an adequate representative because his claim was moot and because he displayed a "lack of energy" in discharging his duties as class representative. *Id.* Specifically, the *Culver* court noted that in the eight years the case had been pending, the class representative had not identified any other class members, nor had he done anything else to move the case forward. *Id.* In contrast, the class representatives in this case have assisted counsel in drafting the complaint and have engaged in discovery. All three of the class representatives provided (1) factual information necessary for the filing of the complaint, (2) sworn affidavits relating to the City's policy of enforcing the panhandling ordinance (one representative provided multiple affidavits); and (3) verified answers to interrogatories. The fact that the class representatives did not initially sign verifications for their

interrogatories is irrelevant—the answers have been verified and the City does not assert that it was prejudiced by any delay. Additionally, plaintiff Jesse Thompson testified both at his deposition and the evidentiary hearing. The plaintiffs concede that two of the plaintiffs were unavailable to be deposed on certain dates (the plaintiffs state that one of the plaintiffs had pneumonia and could not attend his deposition). However, the plaintiffs state that these two individuals are available for depositions at any time and that the City has not asked to reschedule those depositions. The record indicates that the class representatives have participated in discovery and, based on the information they provided during discovery, that they have general knowledge of this case. Therefore, the Court concludes that the class representatives will fairly and adequately protect the interests of the class.

### E. Predominance

To certify a class under Rule 23(b)(3), the Court must find that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b). In this case, the legal issue common to all class members is whether the panhandling ordinance is constitutional. The City seeks to defeat predominance by pointing out that damages would vary according to how the ordinance was enforced against each class member. However, the two cases the City relies upon—*Williams v. Ford Motor Co.*, 192 F.R.D. 580 (N.D. Ill. 2000), and *Hylaszek v. Aetna Life Ins. Co.*, 1998 WL 381064 (N.D. Ill. 1998)—do not support the City's argument. The *Hylaszek* and *Williams* courts denied motions for class certification based in part on their findings that individual issues regarding *liability* predominated over common issues. *Williams*, 192 F.R.D. at 584-85 (reasoning that certification under Rule 23(b)(3) is improper where liability determinations are both individual and fact-intensive) (internal quotation and citation omitted); *Hylaszek*, 1998 WL 381064, at *3-4 (denying certification

-12-

under Rule 23(b)(3) because court would first have to determine whether each member exhausted administrative remedies and then analyze whether the defendants properly denied each member's claim). Neither of these cases stand for the proposition that individual issues regarding *damages* preclude certification under Rule 23(b)(3). Indeed, *Hylaszek* states that "[c]ommon questions of law or fact will predominate when there is a common course of conduct that leads to injury of all the class members." *Hylaszek*, 1998 WL 381064, at *3. There is considerable support for the plaintiffs' position that the possibility of individual damages inquiries is generally not enough to defeat class certification. *Williams v. Rizza Chevrolet-Geo, Inc.*, No. 99 C 2294, 2000 WL 263731, at *3 (N.D. Ill. Mar. 6, 2000); *Abt v. Mazda Am. Credit*, No. 98 C 2931, 1999 WL 350738, at *2 (N.D. Ill. May 19, 1999); *Wilson v. Tinicum Township*, No. Civ. A. 92-6617, 1993 WL 280205, at *8 (E.D. Pa. July 20, 1993) (holding that "'individual proof of damages does not preclude certification of a class under Rule 23(b)(3) where common issues of liability predominate'") (quoting *Kromnick v. State Farm Ins. Co.*, 112 F.R.D. 124, 127 (E.D. Pa. 1986)). The City engaged in a common course of conduct when it enforced the panhandling ordinance—the constitutionality of which is the most significant aspect of this case. The difficulties in the management of this class action are likely to arise (if at all) only with respect to damages. Any such difficulties can be dealt with by using subclasses or bifurcation. *See Rahim*, 2001 WL 1263493, at *16. Accordingly, the Court concludes that issues common to the members of the class predominate over any questions affecting only individual members. *See* 7A Charles Alan Wright, et al., *Federal Practice and Procedure* § 1778, at 528 (2d ed. 1986) (stating that "[w]hen common questions represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for having the dispute on a representative rather than on an individual basis").

## F. Superiority

A court certifying a class under Rule 23(b)(3) also must find that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). In *Peoples v. Sebring Capital Corp.*, No. 01 C 5676, 2002 WL 406979, at *9 (N.D. Ill. Mar. 15, 2002), the court noted that a class action was superior to other available methods based in part on the court's determination that it was "quite likely that the vast majority of class members [are] unaware of the alleged . . . violation[, and e]ven if they were so informed, they would probably lack sufficient incentive to bring individual actions." The same is true of the class members in this case. Moreover, given the size of the potential class, a class action is a more efficient method for resolving the claims of the individual class members. Finally, given that the claims of each individual class member are small relative to the expense of conducting a lawsuit against the City, it is likely that it would be uneconomical for members to pursue individual claims. *See Id.* (collecting cases); 7A Charles Alan Wright, et al., *Federal Practice and Procedure* § 1779, at 556 (2d ed. 1986) (stating that "individual actions . . . may be an inferior alternative to the class action when the economics of the situation make it impossible for the aggrieved members to vindicate their rights by separate actions"). Accordingly, the Court concludes that a class action is superior to other methods for the fair and efficient adjudication of the controversy.

## Conclusion

For the foregoing reasons, this Court recommends that the District Court GRANT the plaintiffs' motion for class certification to the extent it seeks to certify the following class for monetary relief under Rule 23(b)(3):

> All persons who, during the Class Period, have been ticketed, arrested and/or jailed pursuant to Section 8-4-010(f) of the Chicago Municipal Code for panhandling on the public fora in Chicago and those persons who may in the future be ticketed, arrested or jailed pursuant to Section 8-4-010(f) of the Chicago Municipal Code for panhandling on the public fora in Chicago.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this notice. *See* Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1). Failure to object within the specified time period constitutes waiver of the right to appeal. *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

**ENTER:**

*[signature: Nan R. Nolan]*

**Nan R. Nolan**

**United States Magistrate Judge**

Dated: June 11, 2002